## SBN FCCG, LLC v Fog Cutter Capital Group, Inc.

2024 NY Slip Op 30793(U)

March 11, 2024

Supreme Court, New York County

Docket Number: Index No. 650197/2023

Judge: Joel M. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 03M

---------------------------------------------------------------------------------X

SBN FCCG, LLC,

                                     Plaintiff,

                             - v -

FOG CUTTER CAPITAL GROUP, INC.,

                                 Defendant.

---------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 650197/2023 |
| **MOTION DATE** | N/A |
| **MOTION SEQ. NO.** | 002 |

**DECISION + ORDER ON MOTION**

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 002) 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 27, 28, 29, 30, 31, 32

were read on this motion to                              DISMISS                       .

      Plaintiff SBN FCCG, LLC ("Plaintiff" or "SBN") brings this action alleging a breach of Defendant Fog Cutter Capital Group, Inc.'s ("Defendant" or "Fog Cutter") duty to defend and indemnify SBN or its affiliates under the parties' Securities Purchase Agreement ("SPA") for expenses incurred relating to ongoing litigation in Oklahoma and the bankruptcy of Plaintiff's subsidiary, Fog Cap Retail Investors LLC ("Fog Cap"), in Colorado.  Defendant now moves to dismiss the Complaint as premature or, in the alternative, to stay this action.

      For the following reasons, Defendant's motion is granted.

## BACKGROUND

      According to the Complaint, on or about February 15, 2008, SBN purchased Fog Cutter's membership interests in Fog Cap pursuant to the terms and conditions of the SPA (NYSCEF 1 ["Compl."] ¶ 26).  Fog Cap's assets included, among other things, a leasehold interest in a parcel of real estate located in Oklahoma County, Oklahoma (the "Oklahoma Premises") (Compl. ¶¶

650197/2023   SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.          Page 1 of 15
Motion No.  002

1 of 15

34, 39). In the SPA, Fog Cutter represented and warranted that it had complied with all environmental laws and that there were no hazardous materials present on the site, including (without limitation) any hazardous materials requiring remediation (Compl. ¶¶28–29). The SPA included certain indemnification provisions relating to those representations and for certain pre-closing conduct, subject to several conditions.

*The Oklahoma Litigation*

In 2012, Stratford Holding, LLC ("Stratford") filed an action against SBN and its affiliates, Fog Cutter, and nine other parties in the United States District Court for the Western District of Oklahoma (Case No. CIV-12-0772-HE) for purported environmental contamination emanating from a parcel of real estate located in Oklahoma County, Oklahoma (the "Oklahoma Litigation") (Compl. ¶¶ 11, 34, 35).

According to the Complaint, the Oklahoma Premises has at all relevant times been owned by Stratford or its predecessors in interest (Compl. ¶ 35). For many years, the Oklahoma Premises was leased by Stratford to Foot Locker (formerly known as Kinney Shoe Corporation, doing business as Kinney Shoes) which operated a shoe store on the property pursuant to a lease dated February 25, 1977 (the "Master Lease") (Compl. ¶ 36). During the term of the Master Lease (as renewed from time to time), Foot Locker sublet the property to various entities, at least some of which conducted dry-cleaning operations on the property (Compl. ¶ 37). In 2002, Foot Locker sold its leasehold interest as tenant and sub-landlord with respect to the Oklahoma Premises to Fog Cap, which at the time was owned by Fog Cutter (Compl. ¶ 38). In 2008, SBN purchased Fog Cap and its various leasehold interests pursuant to the SPA (Compl. ¶ 39).

In 2012, Stratford conducted tests of the Oklahoma Premises and the test results purportedly showed that dry cleaning solvents were present in the soil on the Oklahoma

**650197/2023  SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.**
**Motion No. 002**

**Page 2 of 15**

Premises, prompting Stratford to file the Oklahoma lawsuit (Compl. ¶¶ 40, 41). In the Oklahoma Litigation, Stratford alleges that the drycleaning operators contaminated the Oklahoma Premises by improperly disposing of dry-cleaning solvents on the property and seeks contractual and statutory liability, jointly and severally, against all defendants for such environmental contamination (Compl. ¶¶ 42–44). Stratford specifically alleges that Foot Locker as predecessor to Fog Cap is contractually liable to Stratford for the environmental damage to the Oklahoma Premises and that Fog Cap and its owners (meaning SBN) and managers contributed to the contamination by among other things improperly handling disposal of the dry-cleaning equipment and residual dry-cleaning fluids after evicting the dry-cleaning tenants (Compl. ¶ 45).

A neighbor of the Oklahoma Premises, the Elaine K. Hall Revocable Trust (the "Hall Trust"), also filed a lawsuit against Fog Cap, Stratford, and numerous other defendants including Foot Locker alleging liability for environmental contamination to property owned by it which is adjacent to the Oklahoma Premises owned by Stratford (Compl. ¶ 46). The Stratford and Hall Trust cases have been consolidated into a single case—the Oklahoma Litigation—which is ongoing (Compl. ¶ 49).

SBN was named a party to the Oklahoma Litigation but was thereafter dismissed due to a lack of personal jurisdiction. Nevertheless, SBN alleges that itself and its affiliates have incurred and expended significant cost defending themselves in the Oklahoma Litigation (Compl. ¶¶ 50, 51). No judgment against SBN or its affiliates has been entered in the Oklahoma Litigation (Compl. ¶ 52).

*The Bankruptcy Proceedings*

On April 20, 2016, Fog Cap filed for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the District of Colorado (Case No. 16-13817 TBM) (the "Bankruptcy

**650197/2023  SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.**
**Motion No. 002**

**Page 3 of 15**

3 of 15

Proceedings") (Compl. ¶¶ 10, 53). During the Bankruptcy Proceedings, substantially all of the assets of Fog Cap were sold and liquidated under 11 U.S.C. § 363, thereby cutting off any future revenues of Fog Cap to SBN FCCG or its affiliates (Compl. ¶54). After liquidation of the Assets, the Bankruptcy Proceedings were converted to a Chapter 7 liquidation (Compl. ¶55).

During the Bankruptcy Proceedings, Stratford filed Claim No. 6 against Fog Cap asserting environmental damages in the amount of not less than $20,726,324, and The Hall Trust filed Claim No. 14 against Fog Cap asserting environmental damages of not less than $1,200,000 (Compl. ¶56). On December 17, 2020, the Bankruptcy Court entered an "Order Approving Stipulations Between Trustee and Foot Locker Retail, Inc. and Stratford Holdings, LLC," (NYSCEF 17). The Stipulation relating to Stratford settled a portion of the underlying litigation and awarded damages to Stratford in the amount of not less than $6,500,000 (NYSCEF 18 [the "Stratford Bankruptcy Stipulation"]). The Bankruptcy Court authorized the Bankruptcy Trustee to distribute funds from the Fog Cap Bankruptcy Estate to Stratford equal to approximately $2,300,000 (Compl. ¶¶57-58). The Bankruptcy Court also authorized the Bankruptcy Trustee to stipulate, on behalf of Fog Cap, to judgment against Fog Cap in favor of Foot Locker, with the amount of damages to be determined in the Oklahoma Litigation (Compl. ¶60 [the "Footlocker Bankruptcy Stipulation").[1] Thus, SBN alleges that the Stratford Bankruptcy Stipulation is, in effect, a judgment established by a fixed amount, giving rise to Fog Cutter's duty to indemnify SBN (Compl. ¶¶62-63).

---

[1] Both Stipulations were subsequently appealed and upheld on appeal to the U.S. District Court of Colorado. Both Stipulations are now on appeal to the United States Court of Appeals for the Tenth Circuit (Compl. ¶61).

**650197/2023 SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.** Page 4 of 15
Motion No. 002

4 of 15

*Notice to Fog Cutter*

According to the Complaint, on or about March 15, 2012, SBN sent Fog Cutter a letter providing notice pursuant to the SPA and demanding indemnification for any and all liabilities related to Environmental Claims, if any, that had ripened on or before that date, those that would ripen in future, and a defense in the Oklahoma Litigation (NYSCEF 3 [the "First Demand Letter"]). SBN alleges that to date, Fog Cutter has not responded to the First Demand Letter or fulfilled its obligations pursuant to the SPA (Compl. ¶67).

Following the Stratford Bankruptcy Stipulation, SBN sent another letter to Fog Cutter on November 2, 2022 providing notice of that liability to Fog Cutter (NYSCEF 4 [the "Second Demand Letter"]). SBN invoked its right to indemnification of the Stratford Bankruptcy Stipulation in addition to an estimate of its costs and expenses in both the Oklahoma Litigation and the Bankruptcy Proceedings, totaling $12,126,000. SBN alleges that to date, Fog Cutter has not responded or fulfilled its obligations pursuant to the SPA (Compl. ¶¶69–71).

On January 13, 2023, SBN filed this action this action alleging a breach of the duty to indemnify (first, second, and third causes of action), breach of the duty to defend (fourth cause of action), and the right to declaratory relief based on all of the alleged contractual breaches (fifth cause of action). Defendant now moves to dismiss the Complaint in its entirety pursuant to CPLR 3211(a)(1), (2), and (7), or alternatively moves for a stay.

## DISCUSSION

CPLR 3211(a) provides, in part: "A party may move for judgment dismissing one or more causes of action asserted against him on the ground that: (1) a defense is founded upon documentary evidence; . . . (2) the court has not jurisdiction of the subject matter of the cause of action; or . . . (7) the pleading fails to state a cause of action[.]" (CPLR 3211(a)(1), (2), (7)). In

**650197/2023   SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.**
**Motion No. 002**

**Page 5 of 15**

5 of 15

considering a motion brought under CPLR 3211(a), "the court must 'accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'" (*DKR Soundshore Oasis Holding Fund Ltd. v Merrill Lynch Int'l*, 80 AD3d 448, 449 [1st Dept 2011], quoting *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). "[H]owever, 'allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration'" (*Myers v Schneiderman*, 30 NY3d 1, 11 [2017] [citations omitted]).

Defendant first argues that the Complaint must be dismissed as premature and unripe for review. There are three issues relevant here: (1) whether the right to indemnification is ripe for adjudication, and (2) whether Plaintiff has sufficiently alleged that the right to defend has been breached, and (3) whether the duty to defend is ripe for adjudication.

Section 10 of the SPA, titled "Indemnification; Remedies" has four subsections: (1) Survival of Representations and Warranties; (2) Indemnification; (3) Defense of Claims; (4) No Right of Contribution (SPA §§ 10.1, 10.2, 10.3, 10.4). The Indemnification provision provides in relevant part:

> "Subject to the provisions of this Article X," Fog Cutter shall "indemnify, defend and hold harmless Buyer, Summit Investment Management LLC, and their respective Affiliates, and their respective stockholders, members, partners, managers, officers, directors, employees, representatives, controlling persons, counsel, agents, successors and assigns (collectively, "Buyer Indemnified Persons"), from and against, and will pay to any Buyer Indemnified Person the amount of, any and all claims, demands, Proceedings,[2] losses, damages, penalties, liabilities, obligations, settlement payments, costs and expenses of every kind

---

[2] "Proceeding" is defined in the SPA to mean "any action, arbitration, audit, hearing, investigation, litigation, or suit (whether civil, criminal, administrative, investigative, or informal) commenced, brought, conducted, or heard by or before, or otherwise involving, any court or other Governmental Body or referee, trustee, arbitrator or mediator" (SPA Art. XI).

**650197/2023   SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.**                    **Page 6 of 15**
**Motion No.  002**

whatsoever (including without limitation, costs of investigating, preparing or defending any such claim or Proceeding and reasonable legal fees and disbursements), *as and when incurred by* such Buyer Indemnified Person and whether or not involving a third party claim (collectively, "Losses"), incurred or suffered by any of the Buyer Indemnified Parties, arising out of or relating to": (i) any "inaccuracy of any representation or warranty," . . . (v) third party claims against Fog Cap "arising out of or relating to events occurring on or before [February 2008]", and (vi) "environmental Liabilities arising out of or relating to events occurring on or before [February 2008]"

(*see* NYSCEF 1 ["Compl."] at ¶¶ 72, 83, 94, NYSCEF 2 [SPA] at § 10.2(a)(i), (v), (vi)

[emphasis added]).  Section 10.3 provides:

"If a claim for Losses (a "Claim") is to be made by a Buyer Indemnified Person or a Seller Indemnified Person (an "Indemnified Person"), such Indemnified Person shall give notice (a "Claim Notice") to (i) Seller, in the case of an indemnification claim pursuant to Section 10.2(a), or (ii) Buyer, in the case of an indemnification claim pursuant to Section 10.2(b), ("Indenmifying Partv"), in either case as soon as practicable after such Indemnified Person becomes aware of any fact, condition or event which may give rise to Losses for which indemnification may be sought under this Article X. If any Proceeding is filed or instituted making a claim against any Indemnified Person *with respect to a matter subject to indemnity hereunder*, notice thereof shall be given to the Indemnifying Party as promptly as practicable; however, the failure of any Indemnified Person to give timely notice hereunder shall not affect rights to indemnification hereunder, except to the extent such indemnified Person is actually prejudiced by such failure (to the extent determined by a court of competent jurisdiction).  After receipt of such a notice of a Proceeding, the Indemnifying Party shall have the right to defend the Indemnified Person against the Proceeding with counsel of its choice satisfactory to the Indemnified Person" [subject to certain conditions] . . . " If the Indemnifying Party fails to promptly and diligently assume the defense of such Proceeding after receipt of notice hereunder, the Indemnified Person against ,which such claim has been asserted shall (upon delivering notice to such effect to the Indemnifying Party) have the right to undertake the defense, compromise or settlement of such Proceeding with counsel of its own choosing at the expense of the Indemnifying Party and the Indemnifying Party shall have the right to participate therein at its own cost."

**650197/2023   SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.**                **Page 7 of 15**
**Motion No.  002**

7 of 15

(SPA § 10.3 [emphasis added]).

### 1. The "Duty to Indemnify" Claim is Premature.

As a general matter, a claim for indemnification does not accrue until payment has been made by the party seeking indemnification (*see McDermott v City of New York,* 50 NY2d 211, 216 [1980]). If the prime obligation to pay has not been established, courts will dismiss indemnification claims as premature (*see e.g., Sledz v 333 E. 68 St. Corp.*, 254 AD2d 196, 197 [1st Dept 1998]; *Veraldi v Am. Analytical Labs., Inc.*, 271 AD2d 599, 600 [2d Dept 2000]; *Alside, Inc. v Spancrete Northeast, Inc.*, 84 AD2d 616, 617 [3d Dept 1981]). An exception exists in the impleader context (*Mars Assoc., Inc. v New York City Educ. Const. Fund*, 126 AD2d 178, 192 [1st Dept 1987]; CPLR 1007), or "where the interests of justice and judicial economy so dictate" (*State v Syracuse Rigging Co. Inc.*, 249 AD2d 758, 759-60 [3d Dept 1998]). "In such an instance, the issuance of a conditional judgment of indemnification, pending the outcome of the main action, is appropriate 'in order that the indemnitee obtain the earliest possible determination as to the extent to which he or she may expect to be reimbursed'" (*id.* [citations omitted]; *see also Allergan Fin., LLC v Pfizer Inc.*, 188 AD3d 402, 404 [1st Dept 2020]). Here, Plaintiff has failed to demonstrate (1) that the prime obligation to pay has been established, or (2) that the interest of justice and judicial economy warrant a conditional judgment of indemnification here.

First, the Stratford Bankruptcy Stipulation (referred to by the parties as the "Stratford Bankruptcy Judgment" or "2020 Distribution Order") was the result of a settlement agreement between certain parties and the Bankruptcy Trustee and provided for a $2.3 million interim distribution to Stratford. This Stipulation cannot be considered a "payment" for the purposes of indemnification because the Stipulation expressly provides that it (i) was for "distribution purposes only, and not for setting an amount of liability," (ii) had "***no legal effect on the***

**650197/2023   SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.**                    **Page 8 of 15**
**Motion No.  002**

8 of 15

***underlying liability*** of Fog Cap or ***any party in the Oklahoma Litigation*** to Stratford in any manner, shape, or form," (iii) had "no res judicata, collateral estoppel, or other preclusive effect on any claims or issues in the Oklahoma Litigation with respect to any litigant against any other litigant in the Oklahoma Litigation," and (iv) was made "***without prejudice*** to any claims or defenses asserted or to be asserted ***by any party in the Oklahoma Litigation*** against any other party based on any all legal theories and defenses…." (NYSCEF 17 at 10-12 [emphases added]).

Second, as Defendant argues, the determination of whether Plaintiff is entitled to indemnification is contingent on the findings in the Oklahoma Litigation, *e.g.*, whether there have been inaccuracies in representations or warranties, or environmental Liabilities for pre-closing conduct. Thus, the Court cannot determine whether Plaintiff is entitled to indemnification in the Oklahoma Litigation until such findings are made in that case (*see e.g.*, *Dresser-Rand Co. v Ingersoll Rand Co.*, 2015 WL 4254033 [SDNY 2015]).

Plaintiff's reliance on *Allergan Fin., LLC v Pfizer Inc.* (188 AD3d 402, 404 [1st Dept 2020]) is misplaced. In that case, the First Department found that a conditional order of indemnification was appropriate because plaintiff attempted to implead defendants in the underlying lawsuits but was prevented from doing so by a contractual forum selection clause.[3] Notably, the indemnification obligation in *Allergan* "encompasse[d] defense costs, not just final

---

[3] As Plaintiff points out, here also the parties have a contractual forum selection clause of New York, which prevents Plaintiff from impleading Fog Cutter in the underlying lawsuits (SPA § 12.5). However, per the Complaint, Plaintiff was dismissed from the Oklahoma Litigation for lack of personal jurisdiction and is no longer a party to that action (Compl. ¶ 50). Even without the forum selection clause, Plaintiff could not have implead Defendant. Thus, the purpose behind the exception for impleader claims does not apply here, as this dispute could not have been resolved in one action (*Bay Ridge Air Rights, Inc. v State*, 57 AD2d 237, 239 [3d Dept 1977], *affd*, 44 NY2d 49 [1978] ["This is not a case where a premature claim for indemnity should be allowed on the ground that the interests of fairness and judicial economy will be furthered by allowing all parties to establish their rights and liabilities in one action"]).

**650197/2023  SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.**
**Motion No.  002**

**Page 9 of 15**

9 of 15

judgments or settlements, and contemplates ongoing quarterly payment of such costs, even before final liability is finally determined, 'subject to refund in the event the Indemnifying Party is ultimately held not to be obligated to indemnify the Indemnified Party'" (188 AD3d at 403). Indeed, the trial court in *Allergan* distinguished the case from *Dresser-Rand* based on that fact, noting that "[w]hile some of the contract provisions in *Dresser-Rand* were similar to the APA's here, significantly, in the *Dresser-Rand* contract, there was no provision for a refund of advanced defense costs to the Indemnifying Party in the event that indemnification is ultimately not found to be required" (*Allergan Fin., LLC v Pfizer Inc.*, 67 Misc 3d 1206(A) [Sup Ct 2020], *affd as mod,* 188 AD3d 402 [1st Dept 2020], citing *Dresser-Rand*, 2015 WL 4254033).

Here, the indemnification clause does not contain any similar provisions about advance payments or refunds. Rather, like *Dresser-Rand*, the right to indemnification is contingent upon a determination of when the environmental contamination occurred, and thus whether Fog Cutter breached its representations regarding the Oklahoma Premises. These issues will be addressed in the Oklahoma Litigation. As Defendant points out, while there are allegations in the Oklahoma Litigation that Fog Cutter is responsible for the environmental contamination, there are ten other parties in that litigation with the same allegations asserted against them.

### 2. *Plaintiff has Failed to Allege that the Right to Defend was Breached.*

The next issue is whether Plaintiff has sufficiently alleged a breach of the right to defend. As noted above, the SPA addresses both the right to defend, and the duty to defend and indemnify. Plaintiff argues that all claims made against SBN and its affiliates in the Oklahoma Litigation and the Bankruptcy Proceedings qualify as claims to which Fog Cutter must provide a defense to SBN and its affiliates under the Agreement. Specifically, SBN alleges that it complied with all the obligations relating to invoking Fog Cutter's right to defend under the

**650197/2023   SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.**
**Motion No.  002**

**Page 10 of 15**

10 of 15

agreement by providing notice of the claims against SBN and its affiliates and demanded that Fog Cutter provide a defense in the Oklahoma Litigation and the Bankruptcy Proceedings. Despite this, SBN alleges that Fog Cutter failed to respond or provide a defense, and as a result, SBN and its affiliates suffered liabilities due to Fog Cutter's breach of its duty to defend in the form of their expenses for defending the Oklahoma Litigation and the Bankruptcy Proceedings.

SBN sent Fog Cutter two notices: a March 15, 2012 letter (NYSCEF 3), which was sent prior to the Oklahoma Litigation commencing, and another letter ten years later on November 2, 2022 (NYSCEF 4). Both letters demanded indemnification pursuant to Sections 10.2 and 10.3 of the SPA, and immediate indemnification for Losses incurred relating to environmental liabilities at the Oklahoma Premises. However, neither letter provides notice of a "Proceeding" as Section 10.3 requires, and they do not mention any specific litigation. And while the Letters demand indemnification and payment of costs thus incurred, neither Letter notifies Fog Cutter of its belief that Fog Cutter failed to promptly and diligently assume a defense of the Oklahoma Litigation and Fog Cap Bankruptcy.

Section 10.3 provides that "[i]f the Indemnifying Party fails to promptly and diligently assume the defense of such Proceeding after receipt of notice hereunder, the Indemnified Person against, which such claim has been asserted shall (*upon delivering notice to such effect to the Indemnifying Party*) have the right to undertake the defense, compromise or settlement of such Proceeding with counsel of its own choosing at the expense of the Indemnifying Party and the Indemnifying Party shall have the right to participate therein at its own cost." [emphasis added]). Thus, Plaintiff has failed to allege a breach of Section 10.3 by Fog Cutter because Plaintiff failed to demonstrate that it complied with the requirements of Section 10.3.

**650197/2023   SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.**
**Motion No.  002**

**Page 11 of 15**

11 of 15

But even assuming Plaintiff had sufficiently alleged a that it complied with the notice requirements of Section 10.3, section 10.3 only provides that Fog Cutter has a "right to defend" not an obligation to defend (as contrasted with section 10.2, which provides that Fog Cutter shall "indemnify, defend and hold harmless" SBN and its affiliates). While it is true that Section 10.3 also provides "the failure of any [indemnitee] to give timely notice hereunder shall not affect rights to indemnification hereunder, except to the extent such [indemnitor] is actually prejudiced by such failure" —this provision is specific to indemnification and does not include the right to defend or have defense costs paid. Rather, the notice requirements allow Fog Cutter the opportunity to defend against a claim, if it chooses to do so. Since Fog Cutter is not obligated to provide a defense, there can be no breach of a non-existent duty. And without proper notice to Fog Cutter that SBN was exercising its right to "undertake the defense, compromise or settlement of such Proceeding with counsel of [SBN's] own choosing at the expense of [Fog Cutter]," Plaintiff has failed to allege any breach by Fog Cutter under this section.

### 3. The "Duty to Defend" Claim is Premature.

The more pressing issue is whether Fog Cutter is responsible now, on an ongoing basis, for costs being incurred by SBN and its affiliates for defending themselves, such that the claim based on a breach of the duty to defend is not premature. Plaintiff relies on section 10.2 of the SPA, which provides that Fog Cutter shall "indemnify, defend and hold harmless" SBN and its affiliates "from and against, and will pay to [SBN or its affiliates] the amount of, any and all claims, demands, Proceedings, losses, damages, penalties, liabilities, obligations, settlement payments, costs and expenses of every kind whatsoever (including without limitation, costs of investigating, preparing or defending any such claim or Proceeding and reasonable legal fees and disbursements), *as and when incurred by* [SBN and its affiliates] and whether or not involving a

**650197/2023   SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.**
**Motion No. 002**

**Page 12 of 15**

12 of 15

third party claim (collectively, "Losses"), incurred or suffered by any of [SBN or its affiliates], arising out of or relating to" any inaccuracy of any representation or warranty or certain pre-closing events (SPA § 10.2 [emphasis added]). Plaintiff argues that the language "as and when incurred by" indicates a present, ongoing duty of Fog Cutter to cover SBN or its affiliates' defense costs, regardless of whether the duty to indemnify ever arises. This argument fails.

Unlike in *Allergan*, the SPA in the present case does not contain a right to a refund in the event the indemnifying party is ultimately held not to be obligated to indemnify the indemnified party. Plaintiff's reading of the SPA would expand the duty to defend to be broader than the duty to indemnify. Courts have, with few exceptions, declined to import such an expansive duty to defend into agreements outside the insurance context (*see Dresser-Rand*, 2015 WL 4254033, at *6, *citing Barbagallo v Marcum LLP*, 11-CV-1358, 2012 WL 1664238, at *5 [EDNY May 11, 2012] ["Where, as here, the contractual indemnitor is not an insurer, the indemnitor's duty to defend is substantially narrower. In such cases, the indemnitor's "duty to defend its contractual indemnitee is no broader than its duty to indemnify."] [applying New York law]; *see also Inner City Redevelopment Corp. v Thyssenkrupp El. Corp.*, 128 AD3d 425, 426 [1st Dept 2015] ["As an indemnitor, [defendant] is not an insurer, and in that context its duty to defend is no broader than its duty to indemnify"]).

Here, there is nothing in the SPA which indicates that Fog Cutter's duty to pay defense costs is broader than its duty to hold SBN and its affiliates harmless from any inaccuracy of any representation or warranty or liability for certain pre-closing events. Rather, the duty to pay is contained within the same paragraph as the duty to indemnify, and there is no language which indicates that Defendant took on the liability of an insurer with an independent duty to fund the cost of defending a potentially indemnifiable claim (*see e.g., Travelers Prop. Cas. Corp. v*

**650197/2023   SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.**
**Motion No.  002**

**Page 13 of 15**

13 of 15

*Winterthur Intern.*, 2002 WL 1391920, at *5 n6 [SDNY 2002] ["Although UBS is not Park–Lane's insurer, its promise in the Lease Provision to defend and indemnify Park–Lane contains language most often used in insurance contracts; therefore, the Court looks to insurance cases to aid in construing the clause."]).  In these circumstances, the duty to defend is no broader than the duty to hold harmless (*see Barbagallo v Marcum LLP*, 11-CV-1358, 2012 WL 1664238, at *5 [EDNY May 11, 2012] ["the clause does not state or imply that Barbagallo's duty to pay "costs or expenses (including attorney's fees and disbursement)" is broader than his duty to "hold [Citrin] harmless from and against ... liability."]).

Second, as in *Dresser-Rand*, the "as incurred" language in the SPA does not necessarily mean that Plaintiff is entitled to "reimbursement *now,* in real time," because reimbursement for defense costs is available only where a party is entitled to indemnification (*Dresser-Rand*, 2015 WL 4254033, at *8).  Here, the duty to defend is contained within the same paragraph as the duty to indemnify, and the duty to indemnify is contingent upon the findings in the Oklahoma Litigation.  Thus, Plaintiff's "entitlement to indemnification is not evident, and the issue of whether [defendant] must provide real-time defense reimbursements, as Plaintiffs contend they must, is equally entangled in the unripe issue of indemnification" (*id.*).

\*     \*     \*

In sum, unless and until liability is established against Defendant and payment is made in the Oklahoma Litigation, Plaintiff's claims for Defendant's alleged breach of duties to defend and indemnify are not ripe for adjudication.  Therefore, this action is dismissed without prejudice to refiling, if appropriate, after resolution of the underlying action (*Dresser-Rand*, 2015 WL 4254033, at *9).

The Court has considered Defendant's remaining arguments and finds them unavailing.

**650197/2023   SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.**                **Page 14 of 15**
**Motion No.  002**

14 of 15

Accordingly, it is

**ORDERED** that Defendant's motion to dismiss is **GRANTED**, and Plaintiff's

Complaint is **dismissed without prejudice**.

The Clerk's office is directed to enter judgment in favor of Defendant and to mark this

action disposed.

20240311141000JMCOHENFF0A7510664D44BE8D6351E664DBE72E

| 3/11/2024 | | |
|-----------|---|---|
| **DATE** | | **JOEL M. COHEN, J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

650197/2023   SBN FCCG, LLC vs. FOG CUTTER CAPITAL GROUP, INC.
Motion No.  002

Page 15 of 15

15 of 15